## **RELEASE AND SETTLEMENT AGREEMENT**

THIS RELEASE AND SETTLEMENT AGREEMENT (hereinafter the "Agreement") is made and entered into as of the __10__ day of ~~August,~~ September 2017 by and between Plaintiff Howard Stalling (hereinafter "Plaintiff" or "Stalling") and Defendant Intec Communications, LLC (hereinafter "Defendant" or "Intec") (collectively referred to hereinafter as the "Parties"). The following paragraphs constitute the entire Agreement between Parties, and no amendment or modification of the Agreement will be valid or binding unless it is signed by all Parties.

## W I T N E S S E T H

WHEREAS, Stalling was employed with Intec until June 7, 2017; and

WHEREAS, on June 21, 2017, Plaintiff filed a Complaint against Defendant in the United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action No. 1:17-cv-02333-CAP raising allegations of unpaid overtime, and accompanying damages and penalties in violation of the Fair Labor Standards Act (the "Complaint"); and

WHEREAS, Defendant has denied and continues to deny any and all liability to Plaintiff;

WHEREAS, to avoid the uncertainty and expense of further litigation in connection with the Complaint, the Parties intend and desire to enter into this Agreement for the purposes of settling and resolving all claims Plaintiff asserts or could have asserted against Defendant for violations of the Fair Labor Standards Act. Plaintiff desired to dismiss his claims arising under the Fair Labor Standards Act and to fully and completely release Defendant from any and all liability and to reach full accord and satisfaction of all claims arising under the Fair Labor Standards Act; and

WHEREAS, this Agreement is intended to and does resolve all matters in controversy, and this agreement constitutes a fair and equitable settlement of all issues that have been or could be raised between the Parties to date.

NOW, THEREFORE, in consideration of the payment of moneys and in further consideration of the promises, covenants, and releases hereinafter set forth, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1. **Settlement Funds and Obligations.** As soon as practicable after the full execution of this Agreement, the Parties agree to submit this Agreement to the Court for approval. The total consideration payable by Defendant to Plaintiff is TWENTY-FOUR THOUSAND DOLLARS and 00/100 ($24,000.00) ("Settlement Funds"), inclusive of Plaintiff's costs, expenses and attorneys' fees, which will be paid on a payment plan, with three separate and equal payments, as follows:

- Defendant will issue the first payment of EIGHT THOUSAND DOLLARS and 00/100 ($8,000.00) within ten (10) days of the Court's approval of this Agreement. Those monies will be issued in three separate checks, as follows: (1) a check made payable to Howard Stalling in the amount of TWO THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 50/100 ($2,318.50), with no deductions or withholdings, which amount constitutes liquidated damages, which will be reported to applicable taxing authorities by means of a Form 1099 to Howard Stalling; (2) a check made payable to Howard Stalling in the amount of TWO THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 50/100 ($2,318.50), minus all applicable deductions and withholdings, in settlement for Plaintiff's claim for unpaid wages, which will be reported to applicable taxing authorities by means of a Form W-2 to Howard Stalling; and (3) a check made payable to Barrett & Farahany, LLP in the amount of THREE THOUSAND THREE HUNDRED SIXTY THREE DOLLARS and 00/100 ($3,363.00) for attorneys' fees and costs, which will be reported to applicable taxing authorities by means of a Form 1099 to Barrett & Farahany, LLP.

- Defendant will issue the second payment of EIGHT THOUSAND DOLLARS and 00/100 ($8,000.00) thirty (30) days following the first payment. Those monies will be issued in three separate checks, as follows: (1) a check made payable to Howard Stalling in the amount of TWO THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 50/100 ($2,318.50), with no deductions or withholdings, which amount constitutes liquidated damages, which will be reported to applicable taxing authorities by means of a Form 1099 to Howard Stalling; (2) a check made payable to Howard Stalling in the amount of TWO THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 50/100 ($2,318.50), minus all applicable deductions and withholdings, in settlement for Plaintiff's claim for unpaid wages, which will be reported to applicable taxing authorities by means of a Form W-2 to Howard Stalling; and (3) a check made payable to Barrett & Farahany, LLP in the amount of THREE THOUSAND THREE HUNDRED SIXTY THREE DOLLARS and 00/100 ($3,363.00) for attorneys' fees and costs, which will be reported to applicable taxing authorities by means of a Form 1099 to Barrett & Farahany, LLP.

- Defendant will issue the third and final payment of EIGHT THOUSAND DOLLARS and 00/100 ($8,000.00) no more than thirty (30) days following the second payment. Those monies will be issued in three separate checks, as follows: (1) a check made payable to Howard Stalling in the amount of TWO THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 50/100 ($2,318.50), with no deductions or withholdings, which amount constitutes liquidated damages, which will be reported to applicable taxing authorities by means of a Form 1099 to Howard Stalling; (2) a check made payable to Howard Stalling in the amount of TWO THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 50/100 ($2,318.50), minus all applicable deductions and withholdings, in settlement for Plaintiff's claim for unpaid wages, which will be reported to applicable taxing authorities by means of a Form W-2 to Howard Stalling; and (3) a check made payable to Barrett & Farahany, LLP in the amount of THREE THOUSAND THREE HUNDRED SIXTY THREE DOLLARS and 00/100 ($3,363.00) for attorneys' fees and costs, which will be reported to applicable taxing authorities by means of a Form 1099 to Barrett & Farahany, LLP.

- Notwithstanding the foregoing payment schedule, the entire settlement amount ($24,000) shall be due and paid in full by Defendant on or before December 15, 2017, so long as the Court has approved the settlement before December 15, 2017.

The checks described above will be sent to Plaintiff's counsel at the times designated herein following and conditioned on full execution of this Agreement and the Court's approval of same. Plaintiff's counsel will deliver Plaintiff's portion of the Settlement Funds to him. Plaintiff acknowledges that he is responsible for any attorneys' fees incurred in raising his claims and agrees that he will not take any legal action against Defendant seeking any payment of attorneys' fees other than as set forth herein, as Plaintiff and Defendant shall be solely responsible for their own respective attorneys' fees, costs, and expenses in connection with this matter.

Plaintiff understands and agrees that Defendant makes no representations regarding the tax consequences of the payments recited herein and assumes no liability whatsoever to any federal, state or local taxing authority for the consequences or treatment of settlement proceeds. Plaintiff understands and agrees that Defendant assumes no liability whatsoever of Plaintiff's tax liability on the settlement proceeds. Plaintiff further agrees that he will pay and be fully responsible for (and indemnify and hold Defendant harmless from any liability for) any state, federal or local taxes assessed by any governmental entity or taxing authority on account of the payment of the settlement funds. Plaintiff understands and agrees that Defendant is neither providing tax nor legal advice, nor making representations regarding tax obligations or consequences, if any, related to this Agreement.

Pursuant to the Older Workers Benefit Protection Act, Plaintiff understands he may take up to twenty-one (21) days to consider this Agreement and has been advised in writing to consult with an attorney before executing it. Having elected to execute this Agreement, to fulfill the promises set forth herein, and to receive thereby the sums set forth in Section 1 above, Plaintiff freely and knowingly, and after due consideration, enters into this Agreement intending to waive, settle, and release all claims he has or might have against Defendant.

Plaintiff understands he may revoke this Agreement for a period of seven (7) days following the day he executes it. Any revocation within this period must be submitted in writing to Lewis Brisbois Bisgaard & Smith, LLP, 1180 Peachtree Street NE, Suite 2900, Atlanta, GA 30309, Attn.: Danielle Berry, and state, "I hereby revoke my acceptance of the Settlement and Mutual Release Agreement." The revocation must be personally delivered to Ms. Berry or mailed via certified mail, return receipt requested, to her attention and postmarked within seven (7) days of execution of this Agreement. Plaintiff understands that this Agreement is not effective until the expiration of such seven (7) day period and that if Plaintiff does not revoke the Agreement during that period, this Agreement shall become effective and enforceable at 5:00 p.m. on the seventh day after execution hereof by Plaintiff.

2. **Release of Claims**. In further consideration for the promises and agreements set forth above, Plaintiff hereby voluntarily, irrevocably, fully and completely releases, acquits and forever discharges Defendant including their controlling or controlled entities, operating units, facilities, institutes, centers, departments, owners, shareholders, trustees, administrators, directors, officers, partners (both limited and general), managers, agents, employees, parents, subsidiaries, divisions, heirs, successors, assigns, insurers (including re-insurers), affiliates and related business entities (collectively referred to as the "Releasees") from any and all claims, causes of action, demands,

liabilities, debts or damages accrued as of the date of execution of this Agreement (known or unknown) which he ever had or now has arising from or related to Plaintiff's employment with any of the Releasees, including but not limited to claims of employment discrimination, retaliation or any other claims under Georgia Code or common laws; any claims under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 (42 U.S.C. § 2000 et seq.); 42 U.S.C. § 1981; Family and Medical Leave Act of 1993, the Rehabilitation Act of 1973, the Genetic Information Nondiscrimination Act, the Americans with Disabilities Act Amendments Act of 2008, the Older Workers Benefit Protection Act, the Age Discrimination in Employment Act of 1967, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Internal Revenue Code of 1986; the Fair Credit Reporting Act, claims for breach of contract, claims for lost or unpaid wages, unpaid commissions or other employee benefits; claims under state law for intentional infliction of emotional distress, pain, suffering or anxiety, negligence, outrageous conduct, invasion of privacy, harassment, retaliation, assault, battery, defamation, slander, wrongful or constructive discharge or any other actions arising in tort or contract; claims for unemployment compensation; and any additional claims under Georgia or federal law. The Parties acknowledge that this release does not release claims arising after the execution of this Agreement. Without limiting the foregoing, Plaintiff releases Defendant and Releasees from any and all claims of any type or nature, up to, through and including the date of execution of this Agreement. Additionally, Plaintiff acknowledges that this Agreement constitutes a full ACCORD AND SATISFACTION of all claims covered by the release provisions of this Paragraph.

3. **Warranties.** By entering into this Agreement, the Parties represent that they fully understand the terms of this Agreement, and that they have voluntarily agreed to this Agreement of their own free will and without any pressure or duress from anyone. The Parties further acknowledge that they have reviewed this Agreement with the advice of counsel and that they mutually participated in the drafting of this Agreement such that its terms shall not be interpreted in favor of, or against, any of the Parties. Each of the Parties represents and warrants that they have not assigned or transferred, or purported to transfer or assign to any other person or entity, any claim arising out of or relating to the released claims.

4. **Covenant Not To Sue or Voluntarily Participate in Class or Collective Action**. Plaintiff agrees, promises and covenants that he has not currently filed administrative charges or causes of action and that he will not file or cause to be filed any civil or criminal action or administrative complaint or charge with any state or federal court, administrative agency or governmental authority concerning any treatment, act, action, omission, comment, conduct or behavior against any Releasee arising from or related to Plaintiff's employment with Defendant occurring prior to the date of execution of this Agreement, including any claim for attorneys' fees.

Plaintiff further agrees not to voluntarily commence, maintain, initiate, prosecute, or cause, support, encourage, voluntarily participate in, assist or advise with any other person or entity to commence, maintain, initiate, or prosecute any class or collective action, suit, proceeding, or claim before any court, administrative agency or in any manner whatsoever attempt or authorize the commencement of any class or collective action, suit, proceeding, or claim relating to any matter released herein against any Releasee and, to the extent he is an involuntary member of any such class, Plaintiff waives any recovery to which he might otherwise be entitled under any state and federal

statutes or common law. This Agreement shall be a complete defense and shall act as a bar to any such action, suit, proceeding or claim.

5. **Agreement Not To Reapply.** Plaintiff agrees not to apply for or accept an offer of employment (including any temporary, independent contractor, full-time or part-time work or other privileges) with Defendant or any of the Releasees.

6. **Non-Disparagement.** Plaintiff agrees not to disparage Intec to its employees (past, present, or potential) or with the public at large, including encouraging others to bring claims against Intec.

7. **Confidentiality.** The Parties agree the terms and conditions of this Agreement and all negotiations and discussions resulting in or relating to this Agreement shall remain strictly confidential, and shall not be disclosed to any other person, including any past, present or potential employees of Releasees, and/or any news media or reporter, except as may be required by law. The Parties will not, directly or indirectly, participate in, initiate, or cause to be initiated, any communications with any person, entity or news media regarding Plaintiff's allegations of wrongful conduct by Defendant, or the negotiations or settlement of this matter. If Plaintiff or Defendant receives an unsolicited inquiry about the status of this dispute, they will respond by saying, without direct or indirect elaboration, "**the matter has been resolved.**"

It shall not be a violation of this section for Plaintiff to provide, to the degree necessary and upon an explicit agreement to maintain confidentiality, information to Plaintiff's spouse, tax advisors or accountants and/or financial planners, lawyers and/or in response to a lawfully issued subpoena or court order. In the event of a subpoena or court order, Plaintiff will give Defendant ten (10) business days notice prior to disclosure of any confidential information to: Paul Gordon, President of Intec Communications, LLC, 1207 S. White Chapel Blvd., Suite 200, Southlake, TX 76092.

The Parties further agree that the confidentiality provisions of Paragraph 7 of this Agreement are essential parts of this Agreement and that the breach of these promises of confidentiality will cause irreparable and substantial harm to the parties. The Parties acknowledge that their sole recourse for the breach of Paragraph 7 is against each other and they covenant and agree only to bring a claim against Plaintiff or Defendant for a breach of these promises and not against any individuals.

8. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld. No assignment shall relieve the assigning party of any of its obligations under the terms of this Agreement.

9. **Amendment and Modification; Waiver.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party to this Agreement. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in

writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

10. **No Third-party Beneficiaries**. This Agreement is for the sole benefit of the Parties to this Agreement and their respective successors and nothing herein, express or implied, is intended to create any third party beneficiaries to this Agreement and nothing herein, express or implied, shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

11. **No Admission Of Liability**. It is understood and acknowledged by all Parties that this is a settlement and compromise of disputed claims and is not and cannot be considered as an admission of liability or wrongdoing by any party hereto; to the contrary, it is understood and acknowledged that all parties expressly deny any liability to each other.

12. **Advice To Seek Counsel**. Plaintiff represents and warrants that he has been encouraged by Defendant to seek advice from anyone of his choosing, including his attorneys, accountant or tax advisor prior to signing this Agreement; that this Agreement represents written notice that he has been given the opportunity and sufficient time to seek such advice; that he has carefully read and fully understands all of the provisions of this Agreement; and that he is voluntarily entering into this Agreement.

13. **Georgia Law Applies**. This Agreement shall be construed as a whole according to its fair meaning and shall be interpreted, governed and construed under the laws of the State of Georgia. The parties intend this Agreement to be valid and binding in all respects.

14. **Severability**. The Parties agree that the terms of this Agreement are contractual and not merely a recital. Should any portion be found by a court of law to be invalid, void, illegal, contrary to law or public policy, or otherwise unenforceable, it is expressly agreed by the Parties that only such portion will be affected and the remainder of the Agreement will stand in full force and effect as if such unenforceable provision had never been contained herein.

15. **Release of All Claims**. Plaintiff further represents and warrants that he was not coerced, threatened or otherwise forced to sign this Agreement, and that his signature appearing hereinafter is genuine. Plaintiff understands that this Agreement contains a full release of ALL claims against Releasees accrued as of the date of execution of this Agreement.

16. **Headings**. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

17. **Counterparts**. This Agreement may be executed simultaneously in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

IN WITNESS WHEREOF, the undersigned Parties have signed and executed this Agreement on the date set forth below as an expression of their intent to be bound by the foregoing terms of this Agreement.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AM GIVING UP RIGHTS I MAY HAVE. I UNDERSTAND I DO NOT HAVE TO SIGN THIS AGREEMENT.

This 10 day of SEPT. 2017.

HOWARD STALLING

This 8 day of Sept 2017.

INTEC COMMUNICATIONS, LLC

By: _____

Its: President